UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : |
| v. | :  CR. NO. 22-cr-116 (CJN) |
| | : |
| DAVID JOSEPH GIETZEN, | : |
| | : |
| Defendant. | : |

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* REGARDING CERTAIN SUBJECTS**

---

Defendant David Joseph Gietzen, who is charged in connection with events at the U.S. Capitol on January 6, 2021, has moved *in limine* for an order precluding the government and its witnesses from using terms and addressing certain subjects that he views as inflammatory. ECF 39. But in essence, he asks for the government to sterilize its evidence and its language in describing his crimes. Indeed, many of the items and terms with which Gietzen takes issue are fair and accurate descriptions of the riot, the rioters, and his conduct, and the Court should deny his motion.

In his motion, Gietzen cites a laundry list of eight types of evidence he wishes to be excluded at trial. Gietzen makes overly broad requests, while citing no specific examples of evidence that he wishes to exclude, nor does he cite any case law or other support for his request. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, No. 18-cr-198, 2022

WL 715238, at *2 (D.D.C. Mar. 10, 2022). It appears that Gietzen is attempting to assert that under the Fed. R. Evid. 403, that the probative value of such evidence would be substantially outweighed by a danger of one or more of the following: unfair prejudice such evidence laid out in his motion would be inadmissible because of unfair prejudice or possibly misleading the jury. If this is what Gietzen is relying on, that reliance is misplaced. Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998). In sum, neither Rule 401 nor 403 supports the defendant's requested relief.

First, Gietzen asks that the court exclude "[A]ny text messages and conversations in any other app found on the cell phones seized from Mr. Gietzen that mention or discuss matters unrelated to the events of January 6, 2021." ECF 39 at 2. But communications occurring before and/or after January 6, 2021, discussing the events of that day or other related information, certainly is relevant to Gietzen's actions on January 6, and could demonstrate his planning, motive, *mens rea*, lack of remorse, all of which are relevant in this case. This request is both overly broad and premature as the government has yet to produce its exhibit list.

Next, Gietzen asks the Court to exclude "[A]ny text messages or conversations in any other app found on the cell phones seized from Mr. Gietzen that mention the presidential inauguration ("inauguration") scheduled on January 20, 2021, and Mr. Gietzen's intention to attend the inauguration." ECF 39 at 3. A preliminary report of messages obtained pursuant to a search warrant on phones seized from Gietzen at the time of his arrest revealed at least two text message communications relating to plans to attend the inauguration, both sent and/or received by Gietzen shortly after January 6, 2021. Such messages shed light on Gietzen's reasons for going to the U.S. Capitol grounds on January 6, namely, to disrupt the certification of the

2

Electoral College vote . When Gietzen's and the other rioters' efforts failed, his discussion of future actions, including those he might take on inauguration day, certainly are probative of his intent.

Third, Gietzen asks the court to exclude "[A]ny photos, images or videos found on the cell phones seized from Mr. Gietzen that are unrelated to the events of January 6, 2021." ECF 39 at  3. As noted above, such photos, images or videos that shed light on the Gietzen's *mens rea*, including those related to advanced planning, motive, knowledge, and feelings about the events which were to take place (or which did take place) at the Capitol on January 6 are relevant to Gietzen's state of mind and should not be pre-emptively excluded before the government has even filed its exhibit list in this case.

Gietzen's fourth request is that the Court not admit "[A]ny statements made by witnesses and/or informants to investigators and/or law enforcement officers about Mr. Gietzen's plans to attend the inauguration." Like Gietzen's second request regarding the admission of cell phone communications regarding his plans to attend the inauguration, such information could be highly relevant and demonstrate Gietzen's motive to attend the events at the U.S. Capitol on January 6, and/or his state of mind around that time period. As such, to exclude such statements at this time would be premature without knowing the context in which they would be offered into evidence.

Fifth, Gietzen asks the Court to exclude "[A]ny statements made by witnesses and/or informants regarding their opinion of Mr. Gietzen's mental health – before, during and after the offense date."  Currently, the government does not plan to admit any such evidence.

Sixth, Gietzen requests that the government be prohibited from admitting evidence that makes "[A]ny reference to Mr. Gietzen and other individuals from that day as "rioters," "insurrectionists," "attackers," or any other inflammatory term." ECF 39 at 3. Such limitation is

3

inappropriate. The riot on January 6, 2021, was in fact an attack on the United States Capitol, the government of the United States, and American democracy. In fact, after carefully considering the facts of other January 6 cases, many judges of this District have recognized the riot as just such an attack. *See*, *e.g.*, *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40-41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147- 48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election."); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33-34, January 26, 2022 ("the effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). *United States v. Nassif*, 1:21-cr-421 (JDB) Tr. Tr. 12/8/22 at 15-16, citing *United States v. Rivera*, 1:21-cr- 60 (CKK) (concluding that "mere presence in a mob rises to the level of disorderly or disruptive makes sense because of the nature of a mob. A mob, like the one on January 6 at the Capitol, is made up of individual members, and each individual member increases his or her power and disruptive force … Each individual member increases the mob's power and disruptive force. As Judge Kollar-Kotelly explained and we've all heard before, just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all the floodwaters subside is water restored to the field. That, too, comes from the *Rivera* case at *5.) None of this

language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. So, too, will prosecutors need to use appropriate language—and not euphemisms—to describe the nature and gravity of Gietzen's conduct.

Terms describing the riot or mob are relevant and Gietzen does not meet the high burden of baring the government from using certain terms under Fed. R. Evid. 403. While Gietzen argues that "Words like 'rioter' and 'insurrection' emphasize group culpability and distract from the proper question of individual culpability," such terms accurately describe Gietzen's actions on that day and/or the consequences of his actions in disrupting and impeding the orderly conduct of government business or official functions. Any unfair prejudice in using these terms can be mitigated by a limiting instruction. The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice. *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis).

Lastly, Gietzen argues that "[A]ny pictures or video filmed by reporters or other media outlets that have been selectively edited or otherwise modified to be confusing or misleading," and that "[A]ny Government-created video montages depicting edited, general January 6 footage or other "highlight reel" footage, including those that increase the density of property destruction, confrontations with law enforcement, or assaults." EFC 39 at 3.  To show the overall riot, its effects, the context of Gietzen's actions, and why the certification of the Electoral College vote was suspended, the government will need present evidence to show the actions of other rioters in other areas of the Capitol building and grounds. None of the rioters were authorized to enter the

5

Capitol building or restricted grounds. Law enforcement officer witnesses will explain that, in expelling rioters, they could not distinguish between those rioters who were overtly violent and those who were not; everyone had to leave. This is because law enforcement could not predict who would act violently; any member of the crowd might be a threat to them. Indeed, throughout the day, individual officers found their attention divided by the need to monitor the whole crowd, rather than focusing on a specific individual. But for Gietzen's actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Mazzocco*, No. 21-cr-54, Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). While a jury will judge Gietzen based on his own actions, the context of his actions will necessarily be placed before them—that context was a riot. The actions of other rioters at multiple areas of the Capitol could be relevant to elements of the crimes with which Gietzen is charged.

      First, as in all January 6 cases, the government intends to call at least one summary witness who will help to orient the factfinder by testifying about riot writ large. Through that witness we plan to present a summary exhibit that shows a montage of the riot and explaining when and where pivotal events occurred on January 6. Such context will prove the fact that civil disorder occurred, which is necessary to the government's proof that the defendant committed an act to obstruct, impede, or interfere with a law enforcement officer incident to and during such disorder, in violation of 18 U.S.C. § 231(a)(3). The context also will help explain to the jury why Congress couldn't resume its work until all rioters were expelled. Furthermore, the government's use of any potential summary witnesses or summary evidence, including any compilations or video montages, to this effect would permissibly "help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a

multitude of witnesses throughout the trial." *See United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983). Any such aspects of the government's case will be "accurate and nonprejudicial[,]" *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014), and will feature "a sufficient foundation[,]" *United States v. Mitchell*, 816 F.3d 865, (D.C. Cir. 2016). For example, in *United States v. Doolin*, 1:21-cr-877447 (CJN), in a bench trial, the Court permitted the admission of two montage-style videos exhibits of the events in the U.S. Capitol building and on Capitol grounds on January 6 through Capt. Patton of the U.S.C.P. At trial, one of the defendants objected to a portion of a montage video being admitted because his client , like Gietzen, did not go enter the Capitol building. The government argued, and the Court agreed, that the government need not "dwell" on that portion of the video given the Court's familiarity with the Capitol itself and the events of January 6. Nevertheless, the Court allowed the video to be played and the witness to testify about it because there was a "contextual basis for the testimony." Tr. Tr. 3/7/23 at 80-88. Such information is important for context of what occurred on January 6, both for the Court in bench trial, and particularly for a jury who may not be as familiar with the events of that day. In addition, there is ample video evidence depicting Gietzen's illegal actions, including assaults of law enforcement officers, so it will be clear to the jury what actions he directly partook in and what he did not. Finally, as noted above, even if this Court found the actions of other rioters were prejudicial, a limiting instruction would be the appropriate remedy.

For the reasons stated above, Gietzen's motion should be denied.

                                      Respectfully submitted,

                                      MATTHEW M. GRAVES
                                      United States Attorney
                                      D.C. Bar No. 481052

By:    */s/ Elizabeth N. Eriksen*
        Elizabeth N. Eriksen
        VA Bar No. 72399
        Trial Attorney, Detailee
        601 D Street, N.W.
        Washington, D.C. 20001
        (202) 616-4385
        Elizabeth.Eriksen@usdoj.gov

        */s/ Rebekah E. Lederer*
        REBEKAH E. LEDERER
        Assistant United States Attorney
        Bar No. PA 320922
        601 D Street, N.W.
        Washington, D.C. 20001
        (202) 252-7012
        Rebekah.Lederer@usdoj.gov