**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CR. NO. 22-cr-116 (CJN)** |
| | : | |
| **DAVID JOSEPH GIETZEN,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTIONS FOR ACQUITTAL AND RELATED BRIEFING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this response in opposition to Defendant David Gietzen's motion for acquittal or, in the alternative, a new trial. ECF No. 59. Defendant's motion should be denied in all respects.

**I.      Background**

The trial in this matter commenced on August 28, 2023, and concluded on August 31, 2023. On August 30th, at the close of the government's case, Defendant Gietzen moved for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. *See* 8/30/23 Minute Entry. With agreement from the parties, the Court elected to defer ruling on the motion until after the parties' closing arguments and the jury's verdict. *Id*.

On August 31, 2023, the jury issued its verdict, finding the defendant guilty of Count 1 (Civil Disorder), Count 2 (Assault on a Federal Officer), Count 3 (Entering and Remaining on Restricted Grounds), Count 4 (Disorderly and Disruptive Conduct on Restricted Grounds), Count 5 (Physical Violence on Restricted Grounds), and Count 7 (Physical Violence on Capitol Grounds). The Court

ordered Defendant Gietzen to file a motion by September 13, 2023, and any response by September 28, 2023. *See* 8/30/23 Minute Entry. The government respectfully files this response in opposition.

## II.     Legal Standard

A.  <u>Pursuant to Federal Rule of Criminal Procedure 29, the Court must view the evidence in the light most favorable to the government and may only grant the defendant's motion if there is insufficient evidence to sustain a conviction.</u>

Federal Rule of Criminal Procedure 29 permits the defendant to move for judgment of acquittal at the close of the government's case in chief or at the close of all evidence on the ground that the evidence presented is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court must consider the evidence "in the light most favorable to the government" to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (citations omitted). Stated otherwise, "a judgment of acquittal is warranted 'only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009) (quoting *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991)).

When considering a Rule 29 motion after a verdict, the Court "must view the evidence in the light most favorable to the verdict and must presume that the [trier of fact] has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). Credibility determinations are for the factfinder. *See United States v. Williamson*, 81 F. Supp. 3d 85, 89 (D.D.C. 2015); *see also Glasser v. United States*, 315 U.S. 60, 80 (1942) (courts should not "weigh the evidence or determine the credibility of witnesses") (superseded by statute on other grounds). "If the evidence reasonably permits a verdict of acquittal or a verdict of guilt, the decision is for

the factfinder to make," and the motion must be denied. *United States v. Jabr*, No. CR 18-0105 (PLF), 2019 WL 13110682, at *4 (D.D.C. May 16, 2019) (granting Rule 29 motion as to completed § 1752(a)(1) offense, denying Rule 29 motion as to attempt to commit § 1752(a)(1), and finding the defendant guilty of same following a bench trial) (citing *United States v. Jemal*, Criminal No. 05-0359, 2007 WL 778623, at *3 (D.D.C. March 12, 2007); *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C. Cir. 1986)).

   B. Pursuant to Federal Rule of Criminal Procedure 33, the Court must only grant a new trial in extraordinary circumstances.

Rule 33 permits the Court to vacate the judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In order to grant a new trial, the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. This power should be exercised with caution and is invoked only in those exceptional cases in which the evidence weighs heavily against the verdict." *United States v. Edmonds*, 765 F. Supp. 1112, 1118 (D.D.C. 1991) (internal citations and quotation marks omitted). The defendant bears this heavy burden under Rule 33, and to meet it he "must show that (1) there was a substantial error and (2) the error affected the defendant's substantial rights." *Williamson*, 81 F. Supp. 3d at 89.

   III. **Argument**
   A. The government introduced sufficient evidence of an assault with and possession of a dangerous weapon to sustain a conviction under Counts 4, 5, 6, and 7.

The video and testimonial evidence clearly showed Defendant Gietzen's overall intentions that day: overrun the police at all costs.  Defendant Gietzen now asks this Court to overlook the evidence and jury's credibility determination. Defendant Gietzen, contends in this motion that same claims he made during testimony: that he did not possess a dangerous weapon, nor did he commit an assault with a dangerous weapon. As argued to the jury, this claim is absurd for two

reasons: 1) his assaultive conducted leading up to 2:31 p.m. proves clear intent, 2) actions during the 2:31 p.m. assault which contradicts his testimony at trial and his argument in this motion. In the end jury did in fact reject the Defendant's claims, finding Defendant Gietzen guilty of assault with a dangerous weapon and possession of a dangerous weapon.

Defendant Gietzen did possess a dangerous weapon by using the pole in a manner, likely to cause bodily harm, which is supported by the evidence, testimony, and, most importantly, the jury's verdict. Though a pole's everyday purpose may be innate and peaceful, the evidence sufficiently proved that the defendant possessed the pole, during an assault, and used in a manner likely bodily injury. The term 'dangerous weapon" is not reserved for only inherently dangerous weapons such as knives or guns. *United States v. Rocha*, 598 F.3d 1144, 1154 (9th Cir. 2010) (quoting United States v. Riggins, 40 F.3d 1055, 1057 (9th Cir. 1994) (defendant beat her two-year-old son with a shoe and belt.)) "Objects that have perfectly peaceful purposes may be turned into dangerous weapons" when used in a manner likely to cause bodily harm. *United States v. Chansley*, 525 F. Supp. 3d 151, 162 (D.D.C. 2021) quoting *United States v. Rocha*, 598 F.3d 1144, 1154 (9th Cir. 2010). Defendant Gietzen argues that a "hallow" pole cannot cause injuries, nor did he intend to cause injury, which is contradicted by that manner he used it: as a weapon to assault officers in their head and upper body region.

Furthermore, Defendant Gietzen's argument that the pole was not dangerous appears to be premised on the claim he did not intend to commit an assault at 2:31 p.m. Given that factfinders are rarely given the opportunity to truly occupy a defendant's mindset at the time, it is black letter law that intent or *mens rea* can be inferred from a defendant's conduct. *See, e.g.*, *United States v. Hite*, 896 F. Supp. 2d 17, 24 (D.D.C. 2012) ("[C]ourts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their

words and conduct, from which, in ordinary human experience, mental condition may be inferred.") (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008))). As for Defendant Gietzen' s conduct, there were two assaults, prior to the 2:31 p.m. assault, during which Gietzen intentionally pushed officers and chanted in their faces. Beyond his conduct present via video evidence, Defendant Gietzen unapologetically doubled down on his behavior, testifying his was unashamed of assaulting (and hurting) officers at both 2:13-2:15 p.m. and 2:28 p.m. Conveniently, the only time the Defendant did not "intend" to assault officers was when he used a pole to jab at the officers. Defendant Gietzen claims his intention was to simply move the officers out of the way. Defendant Gietzen did not suddenly abandon his intention to forcibly bypass officers on his way to access the inside of the Capitol. This was rejected by the jury.

Furthermore, the video evidence contradicts these claims. Gietzen followed officers as they retreated, picked up a pole and then struck at officers, not once, but twice, showing he intended to use the pole as a dangerous weapon to assault officers. *See* Ex. 301.3, 524 and 525. Defendant Gietzen could have easily gone around the officers. Numerous of the open-source exhibits and Sgt. Mastony' s body worn camera (Ex. 408) shows a clear path in front of Defendant Gietzen. He, however, turns his attention to the officers as they sustained an unrelenting barrage of hits and bear spray by other rioters off to his right.  Gietzen then joined his fellow rioters in the barrage by using the pole, as a dangerous weapon, to strike at officers until he made contact. The second strike caused a USCP officer to drop the wooden board he was using as a makeshift shield, proving its capabilities. *See* Ex. 525.

The government also introduced sufficient evidence for a rational factfinder to conclude that the defendant at least attempted to assault a federal officer and cause bodily injury. Again, intent or *mens rea* can be inferred from a defendant's conduct. Based on all the evidence introduced

at trial, including the defendant's deliberate approach towards officers three separate times, and jabbing officers twice with a pole, a rational factfinder could conclude that the defendant *at least* attempted to cause bodily injury on those of officers.

In fact, rational fact finders did conclude the evidence was sufficient and, after weighing all the evidence and rejecting the credibility of Gietzen' s testimony, convicted on Counts Four, Five, Six, and Seven.

> B. The government introduced sufficient evidence for a rational factfinder to conclude that the defendant interfered with *both* commerce and a federally protected function.

In Count One, the Defendant Gietzen was charged with committing or attempting to commit an act to obstruct officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3). To prove that offense, the government was required to prove that (1) "the defendant knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with" law enforcement officers; (2) the law enforcement officers were at that time "engaged in the lawful performance of their official duties incident to and during a civil disorder," and (3) the civil disorder adversely affected either commerce *or* a federally protected function. Final Jury Instructions (ECF No. 50), at 22.  The government could also meet its burden by proving that the defendant *attempted to* obstruct the officers.  *Id.* at 22. The evidence clearly established that the defendant not only attempted to obstruct, impede, or interfere, but was a successful participant in a civil disorder, at the Capitol, which effected both commerce and a federally protected function (which Defendant Gietzen curiously did not address).

First, the testimony of Officer Curtice, Sgt. Cohen, and Sgt. Mastony, along with the overview testimony of Inspector Summers and the summary surveillance video montage (Ex. 101), easily demonstrated that what occurred at the Capitol on January 6, 2021, constituted a

"civil disorder" within the definition of 18 U.S.C. § 232(1).  It was a "public disturbance" involving acts of violence (there were many) by more than three people (there were thousands) that satisfied the definition: it caused an immediate danger of injury and property damage and it in fact resulted in injury and property damage. Defendant Gietzen was not merely present in this civil disorder; he was a front-line participant for over two hours. The evidence supporting the jury's finding that the riot that occurred at the Capitol on January 6, 2021, met the definition of a "civil disorder" was overwhelming.

Second, the evidence established that the civil disorder adversely affected both commerce.  The riot at the Capitol caused  Mayor Bowser to issue curfew for the District of Columbia, *see* Ex. 606. That curfew caused Safeway to close its stores in the District, *see* Ex. 603. That closure caused Safeway to lose out on business and not be able to receive out- of-state shipments, *see* Ex. 604.  Thus, the civil disorder adversely affected commerce for purpose of Section 231.

Third, the civil disorder also adversely affected two federally protected functions: protection of the Vice President and the Capitol. The civil disorder affected the Secret Service's plans to protect former Vice President Pence (and his family) thus interfering with the performance of a federally protected function.  Secret Service Special Agent Lanelle Hawa testifying about the emergency actions the Secret Service had to take to protect Vice President Pence including relocating the Pences' and the motorcade. Additionally, the civil disorder, and Defendant Gietzen' s direct actions, adversely affected the United States Capitol Police's protection of the United States Capitol building, something the police force is sworn to do. The government presented sufficient evidence that Defendant Gietzen obstructed and interfered with Capitol Police officers, during, and incident to a civil disorder.  Every single testifying witness

from the USCP indicated the riot made it difficult for them to perform their duty: protect the Capitol. Therefore, the first two elements are satisfied because the Defendant actively assaulted multiple officers with the intention to obstruct, impede, and interfere as they sought to maintain control over hordes of rioters outside the Capitol building on January 6.

**IV.     Conclusion**

For the reasons outlined above, the Court should deny Defendant's Gietzen's motion for acquittal and motion for a new trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Elizabether Eikerson*
Elizabeth N. Eriksen
VA Bar No. 72399
Trial Attorney, Detailee
1301 New York Avenue, N.W., 8th Floor
Washington, DC 20530
(202) 616-4385
Elizabeth.Eriksen@usdoj.gov

*/s/ Rebekah E. Lederer*
REBEKAH E. LEDERER
Assistant United States Attorney
Bar No. PA 320922
601 D Street, N.W.
Washington, D.C. 20001
(202) 252-7012
Rebekah.Lederer@usdoj.gov